| | |
|---|---|
| RUTH HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No.: 1:14-CV-64 |
| ) | Judges Collier/Lee |
| MATURECARE OF STANDIFER PLACE, ) | |
| LLC d/b/a THE HEALTH CENTER AT ) | |
| STANDIFER PLACE, ) | |
| ) | |
| Defendant. ) | |

# **M E M O R A N D U M**

Before the Court is a motion for summary judgment (Court File No. 15) filed by Defendant MatureCare of Standifer Place LLC d/b/a The Health Center at Standifer Place ("Defendant"). Plaintiff Ruth Harris ("Plaintiff") responded (Court File No. 17) and Defendant replied (Court File No. 18). For the following reasons, the Court will **DENY** the motion (Court File No. 15).

## I.  BACKGROUND

Plaintiff, a Licensed Practical Nurse ("LPN"), was employed by Defendant, a nursing home, from 1998 until 2013. She was fifty-three years old when she began working for Defendant and sixty-eight when she was terminated. From her hiring until 2010, Plaintiff had worked second shift, which ran from 3:00 p.m. until 11:00 p.m. In 2010 she informed a supervisor that she had difficulty seeing and driving at night and was moved to first shift, working from 7:00 a.m. until 3:00 p.m. In November 2012, Defendant moved her back to second shift despite Plaintiff's protestations. Plaintiff filed a complaint with the Equal

Employment Opportunity Commission ("EEOC") on January 11, 2013, and was terminated on January 15, 2013. Plaintiff filed this action alleging age discrimination in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-401, *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C §§ 621, *et seq.*, disability discrimination in violation of the Tennessee Disability Act ("TDA"), Tenn. Code Ann. §§ 8-50-103, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and wrongful termination under the THRA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must

determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

#### A. Age Discrimination

The Age Discrimination in Employment Act ("ADEA") "prohibits an employer from taking an adverse employment action against an employee because of that employee's age."[1] *Marsh v. E. Associated Estates Realty*, 521 F. App'x 460, 465 (6th Cir. 2013) (citing 29 U.S.C. § 623(a)). A "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 466 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)); *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) ("A plaintiff may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination."). "The

---

[1] The same analysis is applicable to Plaintiff's THRA age discrimination claim. *Newsom v. Textron Aerospaces, a div. of Avco, Inc.*, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995) (applying the ADEA framework to an age discrimination claim under the THRA).

3

Case 1:14-cv-00064-CLC-CHS   Document 20   Filed 08/05/15   Page 3 of 10   PageID #: 216

direct evidence and circumstantial evidence paths are mutually exclusive; the plaintiff can meet [his] burden with either method of proof." *Weberg v. Franks*, 229 F.3d 514, 522–23 (6th Cir. 2000). Direct evidence is evidence which, "if believed, requires the conclusion that age was the 'but for' cause of the employment decision." *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014). Unlike in the Title VII context, in an ADEA claim, the burden of persuasion does not shift to the employer once the plaintiff has submitted evidence to support a direct evidence theory. *Id.*

Plaintiff has submitted evidence sufficient to proceed on a direct evidence theory. In her deposition, Plaintiff stated that she was told that she was moved back to second shift because she was older and that "[the facility] needed a younger nurse because the State was coming [to review the facility]." (Court File No. 17-2, Pl.'s Dep., p. 70). Such evidence, if believed, requires the conclusion that age was the but for cause of Defendant's actions. This is true even though the statement was made with regard to the decision to move Plaintiff back to second shift rather than the decision to terminate her. "The 'requires the conclusion' standard does not imply that every allegation and every piece of evidence pertain directly to the adverse actions taken against the plaintiff." *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 910 (6th Cir. 2009). Here, such a statement, made by a decisionmaker in close proximity to the eventual termination suffices to constitute direct evidence of discrimination. The Court will thus **DENY** Defendant's motion for summary judgment as to the age discrimination claim.

### B. Disability Discrimination

The ADA prohibits employers from discriminating against a qualified individual "on the basis of disability." 42 U.S.C. § 12112(a). Absent direct evidence of discrimination, Plaintiff must establish a prima facie case demonstrating "1) he or she is disabled; 2) otherwise qualified

4

for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011). Once Plaintiff has established a prima facie case of disability discrimination, the burden shifts to Defendant to "articulate a non-discriminatory explanation for the employment action." *Id*. at 259 (citing *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802–04 (1973)). If Defendant does so, "the burden shifts back to [Plaintiff] to prove that [Defendant's] explanation is pretextual." *Id*. Despite the shifting burdens of production, Plaintiff ultimately bears the "burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Macy v. Hopkins Cnty. School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (citation and internal quotation marks omitted).

Under 42 U.S.C. § 12102, a disability is: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." The EEOC's regulations have defined the substantially limiting test as follows:

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii).

Plaintiff asserts that she is substantially limited in seeing, a major life activity. *See* 29 C.F.R. § 1630.2(i)(1)(i). So the question is whether Plaintiff's night blindness "substantially limits" her seeing. She points to two cases in which courts have found that night blindness could

constitute a disability: *Capobianco v. City of New York*, 422 F.3d 47 (2d Cir. 2005) and *Livingston v. Fred Meyer Stores, Inc.*, 388 F. App'x 738, 740 (9th Cir. 2010). The Third Circuit has reached the same conclusion. *Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010). In all of these cases, the plaintiffs submitted evidence that they suffered from night blindness and that night blindness substantially limited their ability to see at night. They corroborated the substantial limitation theory by presenting evidence that this inability to see at night prevented them from being able to drive at night. Each court found that such evidence was sufficient to submit the question to the jury because most people in the general population could see well enough to drive at night. *See Capobianco*, 422 F.3d at 59–60; *Livingston*, 388 F. App'x at 740; *Colwell*, 602 F.3d at 502. Plaintiff has submitted similarly sufficient evidence here. She has submitted evidence that she has night blindness and that her night blindness prevented her from driving at night (Court File No. 15-1 Pl.'s Dep., pp. 14–15). Plaintiff has thus submitted sufficient evidence on this element to survive summary judgment.[2]

It is uncontested that Plaintiff's termination constitutes an adverse employment action. And Plaintiff has submitted evidence from which a jury could find that Defendant was aware of her disability (Court File No. 17-7, Franklin Dep., p. 29). Whether Plaintiff was qualified for the position is a question for the jury as both sides have presented evidence on this point. Plaintiff, for example, has presented evidence that she is a licensed LPN with over ten years of experience. A jury could conclude that she was qualified for this position, notwithstanding her disciplinary

---

[2] Defendant objects to a finding of disability because Plaintiff has admitted that she can care for her grandchildren, maintain a driver's license, drive during the day and during the night at times, care for herself and live alone. However, Plaintiff only admitted to being able to drive at night a very short distance on a very well-lit street (Court File No. 15-1, Pl.'s Dep., p. 15). And the remaining activities are patently irrelevant. Plaintiff claims that night blindness limits her ability to see in the dark. None of the other activities referenced by Defendant involve the ability to see in the dark, and so of course her impairment has no effect on her ability to perform those activities.

record. Finally, Defendant does not dispute that Plaintiff was replaced.

Because Plaintiff has submitted proof sufficient to establish her *prima facie* case, the burden shifts to Defendant to put forth a legitimate nonpretextual basis for the termination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). The explanation must be "clear and reasonably specific" and supported by "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not motivated by discriminatory animus." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008). (quoting *Burdine*, 450 U.S. at 257–58) (internal quotation marks omitted). Plaintiff then must produce evidence showing that the reasons offered were pretextual. *Burdine*, 450 U.S. at 253. "[T]he burden of producing evidence of 'pretext' essentially merges with the burden of persuasion, which always lies with the plaintiff." *Gragg v. Somersett Technical Coll.*, 373 F.3d 763, 768 (6th Cir. 2004) (citation omitted). To establish pretext, Plaintiff must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Romans v. Mich. Dep't of Human Serv.*, 668 F.3d 826, 839 (6th Cir. 2012) (quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).

Defendant contends that it had a legitimate nondiscriminatory basis for moving Plaintiff back to second shift. Defendant submitted Plaintiff's disciplinary record, which shows a sharp uptick in problems coinciding with Plaintiff's switch from the second shift to the faster paced first shift (Court File No. 15-1, Exs. 4–18). Plaintiff disputes several of these disciplinary notices (Court File No. 17-4, Pl's. Dep., pp. 67–68). Of particular significance, she disputes the particular incident that immediately preceded her firing (*id*. at p. 67). Plaintiff also points out that other younger employees were not fired for such mistakes (Court File No. 17-5, Daily Dep., pp.

7

59, 111–14). Such evidence is sufficient to create a factual question for the jury as to whether the Defendant's proffered reason was pretextual. The Court will thus **DENY** Defendant's motion for summary judgment as to the disability discrimination claim.

### C. Wrongful Termination

Title VII prohibits an employer from retaliating against an employee "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Wrongful termination under the THRA is analyzed in the same manner as Title VII claims. *See* Tenn. Code Ann. § 4-21-101(a)(1); *Bryant v. Rolling Hills Hosp., LLC*, 836 F. Supp. 2d 591, 605 n.13 (M.D. Tenn. 2011). To establish a *prima facie* retaliation case, a plaintiff must prove

> (1) she engaged in activity protected by [civil rights statutes]; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted) (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)). This is not an onerous burden; rather, it is one easily met. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

Here, Defendant only disputes the fourth element, that Plaintiff has demonstrated a causal connection between the filing of her EEOC complaint and her termination. This element requires "a plaintiff [to] produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Close temporal proximity alone may be sufficient in some cases to establish causation. *Mickey v. Zeidler Tool &*

8

*Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) (finding that two months between the protected activity and the retaliation established causation); *DiCarlo*, 358 F.3d at 421 (finding that 21 days between the protected activity and the retaliation established causation), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 168, 180 (2009); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding that three months between the protected activity and the retaliation established causation).

Plaintiff presented evidence that Plaintiff's counsel faxed a copy of her EEOC complaint to Defendant on January 11, 2013 (Court File No. 17-10). Plaintiff was terminated on January 15, 2013. Defendant argues that Plaintiff cannot show causation because, although the Supervisory Adverse Action Notice terminating Plaintiff was not signed until January 15, 2013, the notice states that it was drafted on January 10, 2013 (Court File No. 15-1, Ex. 18). Given the close temporal proximity of all of these dates, the Court concludes that Plaintiff has submitted evidence sufficient to create a genuine issue of material fact as to the causal connection prong.

Because Plaintiff has submitted proof sufficient to establish her *prima facie* case, the burden shifts to Defendant to put forth a legitimate nonpretextual basis for the termination. Defendant again relies on Plaintiff's disciplinary record and, for the same reasons set forth above, the Court concludes that Plaintiff has presented evidence sufficient to create a factual question as to whether Defendant's proffered reason was pretextual. Accordingly, the Court will **DENY** Defendant's motion for summary judgment as to Plaintiff's wrongful termination claims.

IV. **CONCLUSION**

For the foregoing reasons, the Court will **DENY** Defendant's motion for summary

judgment (Court File No. 15).

**An order shall enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**